**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-2618-SHL-cgc |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Before the Court is Defendant Shelby County Government's ("Shelby County") Motion
for Summary Judgment, filed November 3, 2025.  (ECF No. 27.)  Plaintiff James Fuller
responded on December 1 (ECF No. 28), and Shelby County replied on December 9 (ECF No.
29).  Shelby County argues that it is entitled to summary judgment on Fuller's claim that he was
discriminated against under the Americans with Disabilities Act ("ADA") for Shelby County's
failure to provide him a reasonable accommodation.

Because there exist genuine issues of material fact as to whether Shelby County
sufficiently accommodated Fuller under the ADA, the Motion is **DENIED** as to that claim.  The
Motion is **GRANTED** to the extent that Fuller has made any additional claims.

**BACKGROUND**

The following facts are undisputed unless stated otherwise, and reasonable inferences
drawn from them are viewed in Fuller's favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587–88 (1986).[1]  Fuller suffers from degenerative osteoarthritis disease

which has destroyed both of his knees, and which significantly limits his ability to perform basic

daily activities such as walking or standing without significant pain.  (ECF No. 21 at PageID 99.)

He has worked several jobs with Shelby County starting in 2008.  (ECF No. 27-1 at PageID

126.)  He left a year after he started, but then returned to Shelby County as a custodian at 201

Poplar.  Fuller then took a job as a landscaping foreman with the Division of Corrections in

2010, before taking a position with Human Resources within the Division of Corrections in

2018.  (Id.)  Then, in 2019, Fuller  took a position as Retirement Supervisor and stayed in that

position for the remainder of his employment with Shelby County.  (Id.)

In 2020, Fuller had his right knee replaced.  (Id. at PageID 127.)  Then, on December 1,

2022, Fuller took leave under the Family and Medical Leave Act ("FMLA") to have his left knee

replaced.  (Id.)  Fuller returned to the doctor on December 10, 2022, with an infection, and

eventually had to undergo another procedure on February 27, 2023.  (Id.)  Fuller failed to

provide advanced notice of the second procedure to Joy Miller, his ADA/Leave Coordinator.

(Id.)

Then, on March 7, 2023, Fuller provided Miller with a doctor's note that indicated he was

under medical care, and had a follow-up appointment scheduled for March 20.  (Id.)  The note

also said Fuller was not to return to work until released by the doctor's office, although no

specific date for such a release was listed.  (Id.)  On the same day, Fuller spoke with Miller and

informed her for the first time about the February 27 procedure.  (Id.)  Miller followed up that

call with an email to Fuller, in which she informed him that he had exhausted his FMLA leave as

---

[1] In his response to the Motion, Fuller asserts that he "has no objection to the Defendant's
statement of undisputed facts," and submitted twenty-three additional facts to which Shelby
County responded.  (See ECF No. 29-1.)  The facts herein are derived from those submissions.

2

of February 23, 2023.  (Id.)

On March 12, Miller sent Fuller an email indicating that his leave was extended through March 20, 2023, as an accommodation under the ADA.  (Id. at PageID 128.)  Around March 20, Fuller provided Miller with another letter from his doctor, which stated that he was under the doctor's care, that he had another appointment on May 25, and that he was not to return to work until released by the doctor's office.  (Id.)  At no point after March 20 did Fuller provide Miller with a definite return to work date.  (Id.)

On March 21, 2023, Miller sent Fuller an email with two documents attached: the Medical Inquiry Form Re: Employees Request for an ADA Accommodation, and a Physician Assessment of Physical and Functional Capacity.  (Id.)  The documents, which were to be filled out by Fuller's physician, were sent as part of the ADA interactive process to determine if there were any reasonable accommodations available for any restrictions Fuller may have.  (Id.)  On March 30, 2023, Fuller advised Miller that his doctor would not complete any forms or provide any additional information regarding his medical condition because he had not been released to work.  (Id.)

On April 10, 2023, Miller sent Fuller a letter stating that his leave through April 10, 2023, was approved as an accommodation under the ADA.  (Id. at PageID 129.)  However, the letter also informed him that Shelby County had not received sufficient information to hold his position open.  (ECF No. 27-2 at PageID 134.)  Miller informed Fuller that, based on his doctor's refusal to fill out the requested paperwork along with Fuller's indefinite return to work date, he was administratively separated from employment effective April 10, 2023.  (ECF No. 27-1 at PageID 129.)  Fuller's Separation Notice listed the reason for separation as exhaustion of FMLA and ADA leave.  (Id.)  At no time between March 20 and April 10, 2023, did Fuller provide a

3

note stating what his return-to-work date would be, and at no time did he provide documentation that he would be able to return to work on May 25, 2023, the date of his next doctor's appointment.  (Id.)

Fuller filed his original complaint on September 3, 2024 (ECF No. 1), and his amended complaint on February 28, 2025 (ECF No. 21).  The original complaint included claims under Title VII and Section 501 of the Rehabilitation Act of 1973, and alleged that Shelby County "discriminated against [him] with respect to the terms and conditions of his employment because of his gender/sex, disability, age and reprisal for protected activity when he was treated harsher than two females similarly situated when he was disciplined for accounting errors and the females were not disciplined for the same accounting errors."  (ECF No. 1 at PageID 6.)

Fuller purports to have brought his amended complaint "under the laws of the United States of America, in particular Title VII of the Civil Rights Act of 1964, coded as 42 U.S.C. § 2000e, as amended by § 1981a" and "Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 79."  (ECF No. 21 at PageID 96.)[2]  However, although the amended complaint twice cites 42 U.S.C. § 2000e, Fuller does not include any allegations related to his gender/sex or age, or that he engaged in any protected activity for which he was treated more harshly than his co-workers.  (See generally ECF No. 21.)   Instead, the amended complaint only includes repeated assertions that he was denied reasonable accommodations and that he was discriminated against because of his disability.

Shelby County asserts that it is entitled to summary judgment as to Fuller's failure to

---

[2] Under § 2000e-2(a)(1), it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"

4

accommodate claim because the indefinite leave that Fuller requested is not a reasonable

accommodation under the ADA.  Shelby County further asserts that, contrary to the position

Fuller stakes out in his response, he did not assert any claims under the FMLA or any other

statute prohibiting discrimination in his amended complaint, and, to the extent he seeks to

advance those claims in his response, that approach is impermissible.

## ANALYSIS

A.      **Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is "material" if "proof of that fact would establish or refute an essential element of

the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir.

2012) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)).  Courts view facts in the

record and reasonable inferences that can be drawn from those facts in the light most favorable to

the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986) (citation modified).

Once a properly supported motion for summary judgment has been made, the party

opposing summary judgment must show that there is a genuine dispute of material fact by

pointing to evidence in the record, or argue that the moving party is not entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A genuine issue for trial exists if the evidence would

permit a reasonable jury to return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).

Although courts view all evidence and factual inferences in the light most favorable to

the non-moving party, "the mere existence of some alleged factual dispute[s] between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no genuine issue of material fact." Id. at 247–48. A court's role is not to weigh

evidence or assess the credibility of witnesses, but simply to determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d

619, 623 (6th Cir. 2014) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 251–

52).

**B.    Failure to Accommodate Under the ADA**

It is unlawful under the ADA for a covered entity "to discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). Relevant here, discriminating

on the basis of a disability includes "not making reasonable accommodations to the known

physical or mental limitations of an otherwise qualified individual with a disability who is an

applicant or employee, unless such covered entity can demonstrate that the accommodation

would impose an undue hardship on the operation of the business of such covered entity." 42

U.S.C. § 12112(b)(5)(A).

ADA discrimination claims are analyzed under two different rubrics, depending on

whether the plaintiff relies on "direct" or "indirect" evidence of discrimination. Fisher v. Nissan

N. Am., Inc., 951 F.3d 409, 416 (6th Cir. 2020). Claims, as here, that are based on an employer's

failure to offer a reasonable accommodation "necessarily involve direct evidence (the failure to

accommodate) of discrimination," such that, "[i]f the fact-finder accepts the employee's version

of the facts, no inference is necessary to conclude that the employee has proven this form of

discrimination." Id. (quoting Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 868 (6th Cir. 2007)).

Under this direct-evidence framework,

(1) The plaintiff bears the burden of establishing that he or she is disabled.
(2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified"
for the position despite his or her disability: (a) without accommodation from the
employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a
proposed reasonable accommodation.
(3) The employer will bear the burden of proving that a challenged job criterion is
essential, and therefore a business necessity, or that a proposed accommodation will
impose an undue hardship upon the employer.

Cooper v. Dolgencorp, LLC, 93 F.4th 360, 368 (6th Cir. 2024) (citation omitted).

Although Fuller spills a lot of ink on the issue of whether he is disabled, the thrust of

Shelby County's argument in support of its Motion for Summary Judgment is not that Fuller did

not have a disability.  Instead, it argues that Fuller has failed to satisfy his burden of proving that

the accommodation he proposed, which Shelby County characterizes as indefinite leave, was

reasonable.  (ECF No. 27-2 at PageID 136.)

"If a disabled employee requires an accommodation, the employee is saddled with the

burden of proposing an accommodation and proving that it is reasonable."  Jakubowski v. Christ

Hosp., Inc., 627 F.3d 195, 202 (6th Cir. 2010) (citing Monette v. Elec. Data Sys. Corp., 90 F.3d

1173, 1183 (6th Cir. 1996)).  A plaintiff bears the burden of proving that he will be "capable of

performing the essential functions of the job with the proposed accommodation."  Id.  Under the

ADA, the term reasonable accommodation may include "making existing facilities used by

employees readily accessible to and usable by individuals with disabilities," and "job

restructuring, part-time or modified work schedules, reassignment to a vacant position,

acquisition or modification of equipment or devices, appropriate adjustment or modifications of

examinations, training materials or policies, the provision of qualified readers or interpreters, and

other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). If an

employer seeks to prove that an accommodation is an "undue hardship," it must show that the

request requires significant difficulty or expense. 42 U.S.C. § 12111(10). In assessing undue

hardship, courts consider several factors, including:

> (i) the nature and cost of the accommodation needed . . .;
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B).

Determining whether Shelby County sufficiently accommodated Fuller turns on whether

Fuller's request for accommodation amounted to a request for an indefinite leave of absence, and

whether his request was reasonable under the circumstances. In general, "[t]he ADA does not

require an employer to give an employee an indefinite leave of absence when the employee

cannot provide the expected duration of her impairment." Harris v. Cir. Ct., Clerk's Off., Metro.

Nashville, 21 F. App'x 431, 432 (6th Cir. 2001). Furthermore, in the Sixth Circuit, "when . . . an

employer has already provided a substantial leave, an additional leave period of a significant

duration, with no clear prospects for recovery, is an objectively unreasonable accommodation."

Walsh v. United Parcel Serv., 201 F.3d 718, 727 (6th Cir. 2000).

The timeline here, which is not disputed, reveals that there is a genuine dispute of

material fact as to whether Fuller's request that Shelby County wait to see whether he was

cleared to return to work until after his May 25 doctor's appointment was reasonable under the

circumstances.  Fuller exhausted his FMLA leave on February 23, 2023.  Defendant extended his leave to March 20, as an accommodation under the ADA, and extended it again until April 10, 2023.  Defendant asserts that it "provided more than six weeks of leave **after twelve weeks of FMLA** leave in an attempt to accommodate Plaintiff's purported condition," and that it "could not be expected to continue such leave with no definite end date."  (ECF No. 27-2 at PageID 137–38.)  Although it is true that Fuller never provided definitive confirmation that his May 25 appointment would be the last step before he would be able to return to work, whether it was unreasonable for Shelby County to wait another six weeks from April 10 to see whether he was going to be able to return at that point is a question of fact best not settled at the summary judgment stage.

The circumstances in this case are distinguishable from the Sixth Circuit cases where an employee's request for additional leave were deemed an unreasonable accommodation under the ADA.  For instance, in Walsh v. United Parcel Service, 201 F.3d 718 (6th Cir. 2000), the court determined that the plaintiff's request for additional leave was not a reasonable accommodation, as "plaintiff knew of his injury for years, was on salary continuation for a year, and unpaid medical leave for five months before being terminated."  Id. at 727.  The court explained that its "review of case law in this and other circuits disclosed no cases where an employer was required to allow an employee to take a leave of absence for well in excess of a year—let alone indefinitely—as a reasonable accommodation to the employee's disability."  Id. at 727.

But the cases Walsh cites suggest that Fuller's request to update Shelby County after his May 25 appointment may not have been an unreasonable request under the ADA.  The court in Ralph v. Lucent Technologies, 135 F.3d 166, 172 (1st Cir. 1998), explained that "a very limited four weeks leave time might be required as a reasonable accommodation, even after plaintiff had

9

been given 52 weeks of leave with pay." And Powers v. Polygram Holding, 40 F.Supp.2d 195, 200 (S.D.N.Y. 1999), found that "cases in which courts have concluded that the length of requested medical leave is an unreasonable accommodation as a matter of law usually involved requests for close to a year or more."

The facts here more closely resemble those from Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775 (6th Cir. 1998), which Walsh also cites. There, the Court concluded that cases evaluating ADA accommodations demonstrate that it is not clear that "there should be a per se rule that an unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA." 155 F.3d at 782 (quoting Norris v. Allied–Sysco Food Services, Inc., 948 F. Supp. 1418 (N.D. Cal. 1996)). The court ultimately concluded "that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." Id.

Fuller did not provide Shelby County with a definitive return-to-work date, but he did provide letters from his doctor, including one from around March 20, 2023, that stated he remained under his doctor's care and, although he was unable to return to work at that point, his work status would be updated after his May 25 doctor's appointment. (ECF No. 27-2 at PageID 133.) Here, Fuller essentially sought an additional six weeks of leave on top of the six weeks that he had already been provided after his FMLA leave had been exhausted, at which point his physician would provide an update as to his ability to return to work. The Court cannot conclude, as a matter of law, that the request was for an indefinite period. So, although the leave Fuller requested did not contain a definitive end date, under these circumstances, his request was not unreasonable as a matter of law.

10

The letters from Fuller's physician also undermine Shelby County's argument that it is entitled to summary judgment based on Fuller's failure to engage in the interactive process. Shelby County asserts correctly that "[t]he ADA requires an employer to engage in 'an informal, interactive process with the individual with a disability in need of the accommodation.'" (ECF No. 27-2 at PageID 138 (quoting 29 C.F.R. § 1630.2(o)(3).) It then asserts that Fuller's failure to provide it with the completed forms that it forwarded to him on March 21, 2023, demonstrate a lack of good faith engagement in the process. According to Shelby County, "Defendant placed the ball in Plaintiff's court, and he simply watched it fall to the ground without returning it." (ECF No. 29 at PageID 332.) But whether Fuller should have been more persistent in his attempts to get his physician to fill out the requested paperwork Shelby County provided, and whether the letters he provided to Shelby County were sufficient to constitute engagement in the interactive process, are determinations better suited for trial, not summary judgment.

Finally, there is also a genuine issue of material fact as to whether, as Shelby County asserts, Fuller "cannot show through admissible evidence that Shelby County was aware that he even had a disability at the time of the employment action in question." (ECF No. 27-2.) As Fuller points out, and Shelby County does not dispute, Shelby County sent him emails explaining that he was being provided leave under the ADA, and also informed the Tennessee Department of Labor and Workforce Development Division of Employment Security that "Mr. Fuller was separated for Exhausted FMLA and ADA leave." (ECF No. 29-1 at PageID 338.) Given the foregoing, there is a genuine issue of material fact as to whether Shelby County was aware that Fuller was disabled under the ADA.

For all of the foregoing reasons, Shelby County's Motion for Summary Judgment as to Fuller's failure to accommodate claim is **DENIED**.

### C.    Fuller's Remaining Claims

Fuller's amended complaint clearly asserts that Shelby County discriminated against him under the ADA for failure to accommodate.  However, contrary to his assertions in his response to the Motion for Summary Judgment, he does not make any claims in his amended complaint that could be construed as a claim for FMLA interference or retaliation, or, for that matter, for anything else.

Fuller states that his "first claim for relief is brought, and jurisdiction lies, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq ("ADA") and prohibiting discrimination against disabled individuals in employment."  (ECF No. 21 at PageID 101.)  Despite referring to the ADA claim as his "first claim," Fuller never states what his other claims for relief might be.  Five of the next six paragraphs in his amended complaint refer to "reasonable accommodation" and he suggests near the conclusion of his complaint that Shelby County "discriminated against the Plaintiff with respect to the terms and conditions of his employment because of his disability and reprisal for protected activity when he was administratively discharged for having a disability."  (Id. at PageID 102.)[3]  But Fuller does not explain what protected activity he engaged in.

Nevertheless, in his response to the Motion for Summary Judgment, Fuller asserts that he "states two (2) claims under the FMLA: interference (entitlement) and discrimination (retaliation)."  (ECF No. 28 at PageID 189.)  Perhaps sensing that he did not sufficiently raise those claims in his amended complaint, Fuller asserts that "a plaintiff ha[s] not waived a claim

---

[3] As noted above, the penultimate paragraph of Fuller's amended complaint asserts that "[t]he acts and failures to act of Defendant constituted an unlawful employment proscribed by 42 U.S.C. § 2000e-2(a)(1)," but nowhere does he identify any claims based on his race, color, religion, sex, or national origin.  (Id.)

based on the interference theory where the complaint alleged general violations of 29 U.S.C. § 2615 that could apply both to interference and retaliation claims." (ECF No. 28 at PageID 189 (quoting Morris v. Family Dollar Stores of Ohio, Inc., 320 Fed. App'x, 330, 335 (6th Cir. 2009).)

Although that is an accurate recitation of the law, the problem for Fuller is that his amended complaint never alleges general violations of 29 U.S.C. § 2615 for either interference or discrimination. It is not clear how Defendant could have moved for summary judgment as to claims under the FMLA—or, for that matter, claims as to race, color, religion, sex, or national origin—when the amended complaint contains no such allegations. Although the Court must make inferences in favor of the nonmoving party when ruling on a motion for summary judgment, that does not include inferring claims in the complaint that are not there. And where, as here, a party advances new claims in their opposition to a motion for summary judgment that were never plead, and where there was nothing in the complaint to put the Defendant on notice of the claim, consideration of those claims is improper. See Tucker v. Union of Needletrades, Indus. & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005) (collecting authorities to support the position that a plaintiff cannot raise a new claim in response to a summary judgment motion, as it would subject defendants to unfair surprise).

Plaintiff's response to the motion for summary judgment amounts to an impermissible attempt at amending his complaint for a second time. To the extent that Plaintiff seeks to advance claims under any theory other than the failure to accommodate, he cannot, as they were not plead in the amended complaint and Defendant could therefore not be on notice of them. To the extent Fuller suggests he has pled additional claims beyond claims under the ADA, Defendant's Motion for Summary Judgment is **GRANTED** as to those claims.

## CONCLUSION

For the foregoing reasons, Fuller has raised a genuine dispute of material fact only as to his claim for failure to accommodate under the ADA.  Shelby County's Motion for Summary Judgment is **DENIED** as to that claim and **GRANTED** as to any other claims.

**IT IS SO ORDERED**, this 3rd day of June, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE